Filed 1/13/14  P. v. Matuszewski CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063370 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD234559) |
| MERLINDA MATUSZEWSKI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser, Judge.  Affirmed.

George Siddell for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Merlinda Matuszewski guilty of insurance fraud (Pen. Code, § 550, subd. (a)(1);[1] count 1), concealing an event affecting an insurance benefit (§ 550, subd. (b)(3); count 2), two counts of unauthorized use of personal identifying information (§ 530.5, subd. (a); counts 3 & 5), two counts of grand theft (§ 487, subd. (a); counts 4 and 6), willfully filing a false tax return (Rev. & Tax. Code, § 19705, subd. (a)(1); count 7) and willful failure to appear in court (§ 1320.5; count 8). The court stayed execution of a three-year eight-month sentence in local custody and placed Matuszewski on five years' probation. Matuszewski appeals, contending substantial evidence does not support the convictions on counts 1, 2, 3, 4 and 7. We affirm.

## FACTUAL BACKGROUND

### *Counts 1 and 2*

In 2008, Matuszewski reported to the police that her vehicle had been stolen. She filed a claim with her insurance carrier, Esurance. Title to the vehicle was transferred to Esurance, who paid the lien holder the $17,000 value of the vehicle pursuant to Matuszewski's comprehensive coverage and $4,000 pursuant to her "gap" coverage. In 2011, law enforcement officers found the vehicle in Matuszewski's garage and Esurance took possession of the vehicle.

### *Count 3*

In 2000, Matuszewski acted as a real estate agent for Neinei and Manny Ocampo in their purchase of a home. From 2006 to 2010, Matuszewski prepared the Ocampos'

---

[1]     Further statutory references are to the Penal Code unless otherwise specified.

income tax returns. During these business dealings, the Ocampos gave Matuszewski their personal information.

In 2010, Neinei Ocampo received bills from Sallie Mae for payments on a student loan that Matuszewski had obtained for her daughter, Karen Matuszewski (Karen). The bills contained the word "cosigner." Neinei Ocampo did not know what that meant; her husband handled the family's financial matters. Neither Matuszewski nor Karen had asked the Ocampos to be cosigners and the Ocampos had never given them permission to use their names as cosigners.[2]

Manny Ocampo helped his wife fill out an identity theft affidavit and Sallie Mae removed her name from the loan. When the Ocampos later saw a copy of the loan application, they noticed numerous inaccuracies. Their home address and telephone number and the name of Manny Ocampo's business were incorrect. There were misstatements regarding their assets and liabilities. The e-mail address listed as Neinei Ocampo's was actually Matuszewski's.

*Counts 4 through 7*

In 2000, Matuszewski acted as the real estate agent for Alicia and Nickel Eco when they purchased a home. In 2008, when the Ecos wished to purchase another home, Matuszewski agreed to act as their real estate agent. Matuszewski told Alicia Eco she would have to make a $12,000 down payment. The same day, Matuszewski showed the Ecos an occupied house, and told them that if they wanted the house, the occupant would

---

[2]    Karen had thanked Neinei Ocampo on Facebook for cosigning; Neinei Ocampo believed Karen was using her as a reference for a loan.

leave.  The Ecos gave Matuszewski a $12,000 cashier's check and she gave them a receipt.  The Ecos did not complete any other paperwork; Matuszewski told them "she had to work out some things with the owner of the house, and she would take care of the documentation."  The occupant left the house and the Ecos moved in.  They repeatedly and unsuccessfully tried to contact Matuszewski, and eventually learned the house was in foreclosure.  The Ecos were evicted in early 2009.  They never received a refund of the $12,000 they had given Matuszewski.

Meanwhile, in 2008, Matuszewski offered to prepare the Ecos' 2007 tax return.  They agreed.  Matuszewski had all of the necessary documents because the Ecos had provided it in connection with the real estate transaction.  Matuszewski later told the Ecos the return had been filed and they would not receive a tax refund.  The Ecos did not see a copy of the return, did not sign any forms and did not receive a refund.

In the fall of 2008, the Ecos received a letter from the Internal Revenue Service (IRS) stating they were required to return $2,000 of their $4,000 refund.  The Ecos told the IRS they had not received a refund.  The IRS said the refund had been directly deposited into their account.  The bank informed the Ecos that the refund had been deposited into Matuszewski's account.  The Ecos tried, unsuccessfully, to contact Matuszewski.  The IRS garnished $2,000 from Nickel Eco's pay.  The Ecos obtained a copy of the return from the IRS and noticed inaccuracies, such as claimed business income and expenses although they did not have a business.

*Count 8*

In July 2011, Matuszewski failed to appear in court as ordered.

4

DISCUSSION

"In reviewing a sufficiency of evidence claim, the reviewing court's role on appeal is a limited one. ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' [Citations.] [¶] ' "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" [Citation.]' [Citation.]"[3] (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)

This appeal borders on frivolous. Matuszewski contends the lack of evidence that she profited from the alleged fraud in counts 1 and 2 makes it improbable that she committed those offenses and renders those convictions lacking in evidentiary support.

---

[3] Matuszewski cites three cases for the proposition that if evidence is so improbable as to be without substance, reversal is required. In all three cases, the reviewing courts concluded the testimony of the female victim was inherently improbable. (*People v. Fremont* (1937) 22 Cal.App.2d 292 [statutory rape, assault]; *People v. Headlee* (1941) 18 Cal.2d 266 [kidnapping, robbery, rape]; *People v. Carvalho* (1952) 112 Cal.App.2d 482 [kidnapping].) These cases do not contravene the substantial evidence standard of review set forth above.

Section 550, subdivisions (a)(1) and (b)(3), however, do not require that the defendant profit from the crimes.  As to count 3, Matuszewski contends Neinei Ocampo's version of events was improbable and contradicted by Karen's testimony[4] and, thus, the evidence does not support the conviction.[5]  As to count 7, Matuszewski contends the only wrong was the $2,000 overpayment to the Ecos by the IRS, and she lacked the required criminal intent, as illustrated by her lack of similar convictions.  All of these contentions are meritless.  Matuszewski asks us to reweigh the evidence, which we cannot do.  The substantial evidence standard of review and the facts set forth above require the affirmance of Matuszewski's convictions.

## DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.

---

[4]     Karen testified that Neinei Ocampo agreed to cosign.

[5]     Matuszewski makes the identical argument as to count 4, which did not involve the Ocampos.